## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| FIRST HORIZON NATIONAL CORPORATION and FIRST TENNESSEE BANK NATIONAL ASSOCIATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **CIVIL ACTION NO. 2:14-cv-02562** |
| ST. PAUL MERCURY INSURANCE CO., | ) ) | |
| Defendant. | ) ) | **JURY TRIAL DEMANDED** |
| _____ | ) | |

## <u>COMPLAINT</u>

Plaintiffs First Horizon National Corporation and First Tennessee Bank National Association (together, "First Tennessee" or "Plaintiffs"), for their Complaint against Defendant St. Paul Mercury Insurance Co. ("Travelers"), allege and aver as follows.

## I.    INTRODUCTION

1.    This action arises from Travelers' refusal to honor the promise in its insurance policy to pay $10 million toward coverage for more than $140 million in losses First Tennessee and other insureds incurred in connection with six lawsuits, which together constitute one "single Claim" under the policy.  These underlying lawsuits involve allegations regarding First Tennessee's origination, issuance, marketing, and sale of mortgage-backed securities ("MBS") and raise claims that fall squarely within the insurance policy's broad insuring agreements for directors and officers liability coverage and bankers professional liability coverage.

2.    In exchange for substantial premiums paid by First Tennessee, Travelers issued a "follow form" excess policy that provides coverage for the single Claim at issue here once First Tennessee has paid its $15 million self-insured retention (similar to a deductible) and five other

insurers have paid a total of $55 million in underlying insurance.  Although First Tennessee and the underlying insurers have paid their full $70 million toward the at least $124.8 million that First Tennessee incurred in defending and settling the FHFA suit—the largest of the lawsuits comprising the single Claim at issue here, as described below—Travelers has repeatedly refused to pay any more than $2 million of its $10 million limits.

3.   As a result of Travelers' failure to honor its contractual coverage obligations, First Tennessee has been forced to file this action for breach of contract and declaratory judgment to receive the benefit of the insurance coverage purchased.

## II.   PARTIES AND RELATED PERSONS AND ENTITIES

4.   Plaintiff First Horizon National Corporation ("First Horizon") is a corporation organized under the laws of the State of Tennessee with its principal place of business at 165 Madison Avenue, Memphis, Tennessee.

5.   Plaintiff First Tennessee Bank National Association ("FTB") is a banking institution chartered by the Office of the Comptroller of the Currency with its principal place of business in Memphis, Tennessee.  FTB is a wholly owned subsidiary of First Horizon, and is the immediate parent company of FTN Financial Securities Corp. and First Horizon Asset Securities Inc.

6.   Defendant St. Paul Mercury Insurance Company is an insurer engaged in the business of selling insurance contracts to commercial entities such as Plaintiffs in Tennessee and elsewhere.  St. Paul Mercury Insurance Co. is, upon information and belief, incorporated under the laws of Minnesota and maintains its principal place of business in Minnesota, and is a subsidiary of The Travelers Companies, Inc.  It is referred to as "Travelers" in this Complaint.

7.   Travelers provided excess insurance coverage to Plaintiffs under Excess Policy EC09002604 ("Travelers Policy" or "Policy").  Travelers issued the Policy to First Tennessee,

and the Policy provides coverage to Plaintiffs and their relevant subsidiaries and current and former employees for various coverages, as outlined in the Policy and incorporated from the underlying Primary Policy (as described below). Travelers delivered the Policy to First Horizon at its headquarters in Memphis, Tennessee, and the insurance brokers that assisted in the placement of the Policy are located in Nashville, Tennessee. In exchange for the Travelers Policy and from its Memphis headquarters, First Tennessee paid Travelers an annual premium in excess of $330,000.

8.     Another insurer issued the primary blended insurance coverage to Plaintiffs ("Primary Policy"). The Primary Policy provides coverage to Plaintiffs and their relevant subsidiaries and current and former employees.

9.     First Horizon Asset Securities Inc. ("FHASI") is a wholly owned subsidiary of First Tennessee Bank National Association.

10.    FTN Financial Securities Corp. ("FTN Financial") is ultimately a wholly owned subsidiary of First Horizon.

11.    Gerald L. Baker is an individual who was named as a defendant in the FHFA suit. Mr. Baker served as Chief Executive Officer, President, and a Director of FHASI; President and Chief Executive Officer of FTB; and President and Chief Executive Officer of First Horizon.

12.    Peter F. Makowiecki is an individual who was named as a defendant in the FHFA suit. Mr. Makowiecki served as an officer of FHASI and of a corporate predecessor.

13.    Charles G. Burkett is an individual who was named as a defendant in the FHFA suit. Mr. Burkett served as a Director of FHASI and as an officer of FTB and First Horizon.

14.    Thomas J. Wageman, now deceased, was a Director of FHASI, and was also named as a defendant in the FHFA suit.

## III.     JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

16.     This Court has personal jurisdiction over Travelers because Travelers has submitted to jurisdiction in this state by (a) transacting business in Tennessee, by virtue of selling the Policy to Plaintiffs in Tennessee; and (b) entering into a contract of insurance covering an entity located within Tennessee at the time of contracting.  In addition, Travelers has consented, by the terms of the Policy, to suit in a court of competent jurisdiction in the United States, including this Court.

17.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Memphis, Tennessee.

## IV.     FACTUAL ALLEGATIONS

18.     Plaintiffs incorporate by reference, as if fully set forth herein, the allegations in paragraphs 1-17 above.

### A.     The Insurance Policies

19.     For the August 1, 2009 through July 31, 2010 Policy Period (the "Policy Period"), First Tennessee purchased a tower of insurance with a primary policy and multiple layers of excess coverage, for a total of $75 million in insurance coverage.  Before the insurance companies that issued this coverage are obligated to fund any amount, First Tennessee must first pay a $15 million self-insured retention for the claim.

20.     The Travelers Policy provides one layer of excess coverage in the tower and expressly incorporates the same insuring clauses, warranties, definitions, terms, conditions, exclusions and other provisions of the Primary Policy, unless otherwise specified.  The Travelers

Policy provides $10 million of coverage, which is "excess" of the $15 million retention and $55 million in underlying insurance provided by other insurers.

21.   The Primary Policy has effective dates of the Policy Period.  The Primary Policy has an applicable limit of $10 million and is the first layer of insurance coverage for Plaintiffs above the $15 million retention.  The Primary Policy provides broad insurance protection for Plaintiffs and other identified insureds against losses arising from third-party claims alleging wrongful acts on the part of the insureds and their current or former employees.  A true and correct copy of the Primary Policy, redacted for confidentiality purposes, is attached to this Complaint as Exhibit A.

22.   The Primary Policy contains several separate coverage sections providing different types of insurance, including the "Directors, Officers and Corporate Liability" coverage section (the "D&O coverage section") and the "Financial Institution Professional Liability" coverage section (the "Professional Liability coverage section").

23.   The D&O coverage section of the Primary Policy contains (among others) the following insuring agreement:

> The Insurer will pay, to or on behalf of the **Company**, **Loss** arising from:
>
> (1)   **Claims** first made during the **Policy Period** or the Discovery Period (if applicable) against the **Insured Persons** for **Wrongful Acts**, if the Company has paid such **Loss** to or on behalf of the **Insured Persons** as indemnification or advancement; and/or
>
> (2)   **Securities Claims** first made during the **Policy Period** or the Discovery Period (if applicable) against the **Company** for **Wrongful Acts**.

Bolded terms are bolded in the Primary Policy to indicate that they are defined terms.

24.   "Securities Claim" is defined as a Claim "aris[ing] from the purchase or sale of, or offer to purchase or sell, any securities issued by the Company."

25.     The Professional Liability coverage section of the Primary Policy contains the following insuring agreement:

> The Insurer will pay, to or on behalf of the **Insureds**, **Loss** arising from **Claims** first made against them during the **Policy Period** or the Discovery Period (if applicable) for **Wrongful Acts** committed or allegedly committed by an **Insured** or by any person for whose **Wrongful Acts** an **Insured** is legally responsible.

Bolded terms are bolded in the Primary Policy to indicate that they are defined terms.

26.     For both the D&O and the Professional Liability coverage sections, "Loss" is defined to include Defense Costs and damages, settlements, or judgments.

27.     The Primary Policy's General Terms and Conditions provide that Claims "alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered a single Claim" and are subject to a single $15 million Retention.

28.     The Travelers Policy adopts all of the insuring clauses, warranties, definitions, terms, conditions, exclusions and other provisions of the Primary Policy's D&O and Professional Liability coverage sections.  It provides that Travelers' $10 million in limits attach after First Tennessee has funded its $15 million retention, and after each of the underlying excess layers (totaling $55 million in coverage) has been fully exhausted; thus, under the Travelers Policy, Travelers is obligated to pay for a covered loss in excess of $70 million.  A true and correct copy of the Travelers Policy, redacted for confidentiality purposes, is attached to this Complaint as Exhibit B.

**B.     The Underlying Lawsuits**

29.     Entities and individuals related to First Tennessee were named as defendants in each of the following lawsuits, all of which involve the origination, issuance, marketing, and sale of mortgage-backed securities:

(a)     *Federal Housing Finance Agency v. First Horizon National Corporation, et al.*, No. 11-cv-6193 (S.D.N.Y.) (the "FHFA suit");

(b)     *Federal Home Loan Bank of Chicago v. Banc of America Funding Corporation, et al.*, No. 10CH45003 (Ill. Circuit Ct., Cook Cnty.) (the "FHLB-Chicago suit");

(c)     *The Charles Schwab Corporation v. BNP Paribas Securities Corporation, et al.*, CGC-10-501610 (Cal. Sup. Ct., San Fran. Cnty.) (the "Schwab suit");

(d)     *Western & Southern Life Insurance Company, et al. v. DLJ Mortgage Capital, Inc., et al.*, No. A01105352 (Ohio Ct. of Common Pleas, Hamilton Cnty.) (the "Western & Southern suit");

(e)     *Fed. Deposit Ins. Corp. v. Chase Mortg. Fin. Corp., et al.*, 12-cv-6166 (S.D.N.Y.) (the "New York Colonial suit"); and

(f)     *Fed. Deposit Ins. Corp. v. Banc of Am. Funding Corp., et al.*, cv-2012-901035.00 (Ala. Cir. Ct., Montgomery Cnty.) (the "Alabama Colonial suit" and, together with the New York Colonial suit, the "Colonial suits").

This Complaint refers to these six lawsuits collectively as the "2009-10 Claim."

**i.     The FHFA suit**

30.     During the 2009-10 Policy Period, First Tennessee received a subpoena from the Federal Housing Finance Agency ("FHFA"), acting as conservator of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac").

31.     First Tennessee provided notice of the subpoena in July 2010, during the Policy Period.

32.     FHFA subsequently filed the FHFA suit against several First Tennessee-affiliated individuals and entities, among other defendants.  The Amended Complaint in the FHFA suit is attached as Exhibit C to this Complaint.

33.     The First Tennessee defendants in the FHFA suit were First Horizon; FTB (as successor to First Horizon Home Loan Corporation ("FHHLC"), which operated as a division of First Tennessee); FHASI; FTN Financial; Baker; Makowiecki; Burkett; and Wageman.

34.     FHFA alleged that the First Tennessee defendants in the FHFA suit made misrepresentations in registration statements and prospectus supplements for certain mortgage-backed securities, and that those statements induced Freddie Mac and Fannie Mae to purchase the securities from First Tennessee at inflated prices.  The alleged misrepresentations involved compliance with underwriting guidelines; the occupancy status of certain underlying properties; loan-to-value ("LTV") ratios of the underlying properties; and credit ratings that were allegedly inaccurate as a result of these statements.

35.     FHFA alleged that FHASI and the individual First Tennessee-affiliated defendants "are directly responsible for the misstatements and omissions of material fact contained in the Registration Statement because they prepared, signed, filed and/or used these documents to market and sell the Certificates to Fannie Mae and Freddie Mac."

36.     FHFA alleged that FTN Financial is "also directly responsible for the misstatements and omissions of material fact contained in the Registration Statement for the Securitizations on which [it was an] underwriter[] . . . because [it] prepared and/or used the Registration Statement to market and sell the Certificates to Fannie Mae and Freddie Mac."

37.     FHFA alleged that FTB and First Horizon "are also responsible for the misstatements and omissions of material fact contained in the Registration Statement by virtue of

their direction and control over Defendants First Horizon Asset Securities and FTN," and that they "directly participated in and exercised dominion and control over the business operations of" FHASI and FTN Financial.

38.     FHFA alleged that FHASI was the depositor for the securitizations at issue in the FHFA suit.  In at least one brief filed with the court in the FHFA suit, FHFA argued that the depositors of certain securitizations are the "issuers" under relevant law.

39.     FHFA claimed that the First Tennessee defendants in the FHFA suit were liable for $883 million in damages under six causes of action based on alleged violations of federal and District of Columbia statutes and common law.

40.     On April 3, 2014, Travelers agreed not to raise lack of consent as a coverage defense to First Tennessee's contemplated settlement of the FHFA suit.  Travelers did not, however, agree to fund its $10 million policy limits toward a settlement of $110 million.

41.     On April 29, 2014, FHFA and the First Tennessee defendants to the FHFA suit executed a settlement agreement, under which First Tennessee agreed to pay $110 million to FHFA to resolve the dispute.

42.     First Tennessee incurred more than $14.8 million in Defense Costs in defending the FHFA suit.

43.     By funding the $110 million settlement payment and the $14.8 million in Defense Costs, First Tennessee has incurred covered Loss of at least $124.8 million for the FHFA suit. This amount exceeds and exhausts the $15 million self-insured retention and the $55 million in insurance provided by the underlying policies.

44.     Each insurer issuing the Primary Policy and the underlying excess policies has funded its full policy limits toward the $110 million settlement of the FHFA suit.  All policy

limits underlying the Travelers Policy have therefore been exhausted by payment from the underlying insurers for the FHFA suit.

45.     Travelers has paid First Tennessee $2 million in connection with the FHFA suit, but has refused to pay any additional amount.

46.     The FHFA suit arises out of or is based upon or attributable to the same or related facts, circumstances, situations, transactions or events or series of related facts, circumstances, situations, transactions or events as the other lawsuits that comprise the 2009-10 Claim.

47.     First Tennessee has complied with all conditions precedent for coverage under the Policy for the FHFA suit.

48.     First Tennessee has satisfied all notice and consent provisions with respect to the FHFA suit.

### ii.     The FHLB-Chicago Suit

49.     During the Policy Period, FHLB-Chicago served a demand on First Tennessee seeking $25 million in damages related to its purchase of certain securities.  It then filed the FHLB-Chicago suit seeking to recover this amount (plus interest) from First Tennessee.

50.     The First Tennessee defendants in the FHLB-Chicago suit included FHASI (identified as a "Depositor Defendant") and FTB (identified as a "Controlling Person Defendant" and an "Underwriter Defendant").

51.     FHLB-Chicago asserted that it was induced to purchase a number of specific securities from the defendants at inflated prices by false statements related to underwriting, LTV ratios, and occupancy status rates, as well as the ratings that were inaccurate as a result of these statements.  FHLB-Chicago also alleged that misstatements were made related to predatory lending restrictions.

52.     First Tennessee has incurred more than $2.7 million in covered Loss in connection with the claims asserted against the First Tennessee defendants in the FHLB-Chicago suit.

53.     Travelers has not agreed to pay any amount of its Policy limits toward coverage for the FHLB-Chicago suit.

54.     The FHLB-Chicago suit arises out of or is based upon or attributable to the same or related facts, circumstances, situations, transactions or events or series of related facts, circumstances, situations, transactions or events as the other lawsuits that comprise the 2009-10 Claim.

55.     First Tennessee has complied with all conditions precedent for coverage under the Policy for the FHLB-Chicago suit.

56.     First Tennessee has satisfied all notice and consent provisions with respect to the FHLB-Chicago suit.

### iii.     The Schwab Suit

57.     In 2010, First Tennessee-affiliated entities were named as defendants in the Schwab suit.

58.     The First Tennessee defendants in the Schwab suit include FTB (which allegedly "sold Schwab two of the certificates" at issue), and FHASI (which allegedly was "the issuer of one of the certificates that CitiGroup Global sold to Schwab and the two certificates that First Tennessee sold to Schwab").

59.     Schwab asserts that false statements related to LTV ratios, reported appraisal values, occupancy status of properties, and underwriting induced Schwab to purchase a number of specific securities from the defendants at inflated prices.  The alleged face value of the First Tennessee-related securities at issue in the Schwab suit is approximately $110 million.

60.    First Tennessee has incurred more than $2.19 million in covered Loss in connection with the claims asserted against the First Tennessee defendants in the Schwab suit.

61.    Travelers has not agreed to pay any amount of the limits of the Travelers Policy toward coverage for the Schwab suit.

62.    The Schwab suit arises out of or is based upon or attributable to the same or related facts, circumstances, situations, transactions or events or series of related facts, circumstances, situations, transactions or events as the other lawsuits that comprise the 2009-10 Claim.

63.    First Tennessee has complied with all conditions precedent for coverage under the Policy for the Schwab suit.

64.    First Tennessee has satisfied all notice and consent provisions with respect to the Schwab suit.

### iv.    The Western & Southern Suit

65.    In 2011, First Tennessee-affiliated entities were named as defendants in the Western & Southern suit.

66.    The First Tennessee defendants in the Western & Southern suit include FTB (as the alleged "successor-in-interest to First Horizon Home Loan Corporation"); FHHLC (as "the sponsor, seller, and servicer of the securitizations" at issue); and FHASI (as "the depositor for each of the First Horizon securitizations involved in this action").

67.    The plaintiffs in the Western & Southern suit allege that the defendants improperly used "robo-signers" to falsely execute tens of thousands of foreclosure affidavits a month, manipulated the appraisal process, misrepresented LTV ratios, and misrepresented owner occupancy rates of the underlying mortgages, and that as a result Western & Southern purchased

specific securities at inflated prices.  The alleged face value of the First Tennessee-related securities at issue is approximately $22 million.

68.     First Tennessee incurred more than $12.7 million in covered Loss in connection with the claims asserted against the First Tennessee defendants in the Western & Southern suit.

69.     Travelers has not agreed to pay any amount of its Policy limits toward coverage for the Western & Southern suit.

70.     The Western & Southern suit arises out of or is based upon or attributable to the same or related facts, circumstances, situations, transactions or events or series of related facts, circumstances, situations, transactions or events as the other lawsuits that comprise the 2009-10 Claim.

71.     First Tennessee has complied with all conditions precedent for coverage under the Policy for the Western & Southern suit.

72.     First Tennessee has satisfied all notice and consent provisions with respect to the Western & Southern suit.

### v.     The Colonial Suits

73.     In 2012, First Tennessee-affiliated entities were named as defendants in the Colonial suits.

74.     The First Tennessee defendants in the Colonial suits are FHASI (alleged to be the depositor and the issuer of relevant securitizations), FTN Financial (alleged to be a "securities underwriter"), and FHHLC (alleged to have controlled FHASI during the relevant time).

75.  The Colonial suits allege that the defendants made misrepresentations or omissions in connection with the offering and sale of certain mortgage-backed securities.  The complaints allege that Colonial paid at least $145 million for the First Tennessee-related securities at issue in the Colonial suits.

76.     First Tennessee has incurred more than $700,000 in covered Loss in connection with the claims asserted against the First Tennessee defendants in the Colonial suits.

77.     Travelers has not agreed to pay any amount of the limits of the Travelers Policy toward coverage for the Colonial suits.

78.     The Colonial suits arise out of or are based upon or attributable to the same or related facts, circumstances, situations, transactions or events or series of related facts, circumstances, situations, transactions or events as the other lawsuits that comprise the 2009-10 Claim.

79.     First Tennessee has complied with all conditions precedent for coverage under the Policy for the Colonial suits.

80.     First Tennessee has satisfied all notice and consent provisions with respect to the Colonial suits.

**C.      Coverage of the 2009-10 Claim**

81.     The lawsuits comprising the 2009-10 Claim allege, arise out of, or are based upon or attributable to the same or related facts, circumstances, situations, transactions or events.  As a result, they constitute a single Claim under the Policy and are subject to a single $15 million retention.

82.     First Tennessee has fully satisfied the $15 million retention by payments it has made in connection with the FHFA suit and the other matters comprising the 2009-10 Claim.

83.     Each relevant First Tennessee entity and individual defendant in the lawsuits comprising the 2009-10 Claim is insured under the terms of the Policy.

84.     All insurance policies underlying the Travelers Policy have been fully exhausted by payment to First Tennessee from the underlying insurers.

14

85.     First Tennessee has complied with all conditions precedent for coverage under the Policy for the 2009-10 Claim.

86.     First Tennessee has satisfied all notice and consent provisions with respect to the 2009-10 Claim.

87.     First Tennessee's losses resulting from the 2009-10 Claim constitute covered Loss under the Travelers Policy.

88.     The 2009-10 Claim has resulted in more than $140 million in covered Losses to First Tennessee, which exceeds the applicable limits of the Travelers Policy.

89.     No exclusion limits or precludes coverage for the 2009-10 Claim.

90.     Despite First Tennessee's entitlement to coverage under the Travelers Policy, Travelers has refused to fund its full limits toward indemnifying First Tennessee for Loss arising from the 2009-10 Claim.

## COUNT I
## BREACH OF CONTRACT

91.     First Tennessee incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1-90 above.

92.     The Travelers Policy is an insurance contract for which First Tennessee paid Travelers premiums in exchange for insurance coverage, including coverage for losses arising from the 2009-10 Claim.

93.     First Tennessee's Loss incurred in connection with the 2009-10 Claim exceeds First Tennessee's self-insured retention (which has been exhausted), and the underlying insurance policies have been fully exhausted by payment from each underlying insurer.

94.     First Tennessee is entitled to indemnification under the Travelers Policy for Loss incurred in connection with the 2009-10 Claim.

95.     By not agreeing to fund the total of $8 million in remaining Policy limits that Travelers owes in coverage for the 2009-10 Claim, Travelers has breached its contractual coverage obligations.

96.     As a result of Travelers' breach of the Travelers Policy, First Tennessee has sustained and will continue to sustain damages, in an amount to be established at trial, for which Travelers is liable to First Tennessee.

## COUNT II
## DECLARATORY JUDGMENT

97.     First Tennessee incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1-96 above.

98.     The Travelers Policy is an insurance contract for which First Tennessee paid Travelers premiums in exchange for insurance coverage, including coverage for losses arising from the 2009-10 Claim.

99.     First Tennessee's Loss incurred in connection with the 2009-10 Claim exceeds First Tennessee's self-insured retention (which has been exhausted), and the underlying insurance policies have been fully exhausted by payment from each underlying insurer.

100.    First Tennessee is entitled to indemnification under the Travelers Policy for Loss incurred in connection with the 2009-10 Claim.

101.    The parties dispute Travelers' coverage obligations under the Travelers Policy, and an actual case or controversy exists regarding First Tennessee's rights and Travelers' obligations to pay losses incurred by First Tennessee related to the 2009-10 Claim.

102.    Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment from this Court establishing the following:

(a)    First Tennessee's losses arising from the lawsuits comprising the 2009-10 Claim are insured losses under the Policy, and

(b)    Travelers is obligated to pay First Tennessee for the full amount of its share of these losses.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that the Court:

(1)    enter judgment on Count I of the Complaint in favor of First Tennessee and against Travelers;

(2)    enter judgment on Count I of the Complaint for compensatory damages in favor of First Tennessee and against Travelers in an amount sufficient to compensate First Tennessee for all losses sustained as a result of Travelers' breach of the Policy and refusal to pay First Tennessee for losses incurred in connection with the lawsuits comprising the 2009-10 Claim;

(3)    enter a declaratory judgment on Count II of the Complaint in favor of First Tennessee and against Travelers, declaring as follows:

(a)    First Tennessee's losses incurred in connection with the lawsuits comprising the 2009-10 Claim are insured losses under the Policy, and

(b)    Travelers is obligated to pay First Tennessee for the full amount of its share of losses incurred in the lawsuits comprising the 2009-10 Claim;

(4)    award to First Tennessee and against Travelers prejudgment interest, to be calculated according to law, to compensate First Tennessee for the loss of use of funds caused by Travelers' wrongful refusal to pay First Tennessee for losses incurred in connection with the lawsuits comprising the 2009-10 Claim; and

(8)    award First Tennessee such other, further, and additional relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that all claims in this action be tried to a jury.

Dated:  July 22, 2014

Respectfully submitted,

*/s/ Anthony P. Tatum*
Anthony P. Tatum
Georgia Bar No. 306287
Michael B. Wakefield
Georgia Bar No. 950517

KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA  30309
404-572-4600 (Phone)
404-572-5138 (Fax)
ttatum@kslaw.com
mwakefield@kslaw.com